CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love,**<br><br>    Plaintiff,<br><br>  v.<br><br>**KSSF Enterprises LTD.,** a California Corporation**; W Hotel Management, Inc.,** a California Corporation;<br><br>    Defendants, | **Case No**. 3:20-cv-08535-LB<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Samuel Love complains of Ashford San Francisco II LP, a Delaware Limited Partnership ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He is a paraplegic. He uses a wheelchair for mobility.

2. Defendant KSSF Enterprises LTD, a California Corporation owns the W San Francisco Hotel located at 181 3rd Street, San Francisco, California,

1

currently and at all times relevant to this complaint. Defendant W Hotel Management, Inc., a California Corporation, operates the Hotel currently and at all times relevant to this complaint.

3. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

4. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7. This is a lawsuit challenging the reservation policies and practices of a

place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, **is not claiming that that the hotel has violated any construction-related accessibility standard**. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8. After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9. As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10. But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe

First Amended Complaint                                    3:20-cv-08535-LB

disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom, and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff planned on making a trip in February of 2021 to the San Francisco, California area. He had tremendous difficulty in finding a hotel that provided enough information about accessibility features that would permit him to independently assess whether the rooms worked for him.

15. Plaintiff felt that the W San Francisco Hotel would work well for him due to its desirable location and price point. Thus, on or about October 6, 2020, plaintiff went to the W San Francisco Hotel reservation website at https://www.marriott.com/hotels/travel/sfowh-w-san-francisco/ seeking to book an accessible room.

16. This website reservation site is either maintained and operated by the defendant or is run by a third party on the defendant's behalf. It is the official online reservation system for this hotel.

17. But there are very few, if any, accessible features identified for any given room. Instead, the reservations website has an "Accessibility" tab that

provides a general list of supposedly accessible features but does not provide any actual data or information beyond a naked label of "accessible." For example, the hotel delivers this information about the "accessible areas:"

> **Accessible Areas with Accessible Routes from Public Entrance**
> Business Center
> Fitness Center
> Meeting spaces and ballrooms
> Public entrance alternative
> Registration Desk Pathway
> Registration desk
> Restaurant(s)/Lounge(s)

18. But just about *every* hotel has a business centers, fitness centers, a registration desk, public routes and a restaurant or lounge. Here, all the hotel did was slap the label "accessible" on all of its public spaces. Similarly, under the tab "Accessible Hotel Features," the hotel delivers this information:

> **Accessible Hotel Features**
> Service animals are welcome
> Elevators

19. Again, just about *every* hotel has elevators, but this hotel simply slaps the label "accessible" on the elevator without providing a single bit of data. Finally, with reference to any particular or given hotel room, the hotel has this tab for

5

the rooms:

> **Guest Room Accessibility**
>
> Accessible guest rooms with 32" wide doorways
>
> Accessible route from public entrance to accessible guest rooms
>
> Alarm clock telephone ringers
>
> Bathroom grab bars
>
> Bathtub grab bars
>
> Bathtub seat
>
> Deadbolt locks, lowered
>
> Door night guards, lowered
>
> Doors with lever handles
>
> Electrical outlets, lowered
>
> Flashing door knockers
>
> Hearing accessible rooms and/or kits
>
> Roll-in shower
>
> Shower wand, adjustable
>
> TTY/TTD available
>
> TV with close-captioning
>
> Toilet seat at wheelchair height
>
> Transfer shower
>
> Vanities, accessible
>
> Viewports, lowered

20. Here, at least, there are a couple pieces of actual information that would

First Amended Complaint 3:20-cv-08535-LB

comply with the ADA's mandate to provide "enough *detail* to reasonably permit individuals with disabilities to *assess independently* whether a given hotel or guest room meets his or her accessibility needs. See 28 CFR 36.302(e)(1)(ii).

21. The hotel lets guests know that the doorways are at least 32 inches in width. That in rooms with bathtubs, they have grab bars. That the doors have levers. That at least one of the rooms has a roll-in shower, that the shower has an adjustable wand. These meager offerings have the virtue of having some actual detail instead of just being a conclusory label "accessible."

22. But it is nowhere near enough to permit a profoundly disabled wheelchair user to have any confidence or come to any conclusions about whether any given hotel room works for him or her.

23. Claiming something is "accessible" is a conclusion or opinion. Persons with disabilities do not have to rely upon the naked judgment or conclusions of the hotel. The ADA specifically mandates that hotels must provide specific information to persons booking their rooms. Under the ADA, the hotel must not only identify but "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words).

24. For example, instead of claiming that routes are "accessible," it would have been sufficient to state, "the route from the public entrance to the registration desk, to the restaurant, to the exercise room, and to the guestrooms are all a minimum of 36 inches in width." That is specific information about the key feature of an accessible route.

25. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about the core features so that he can

7

independently assess whether the hotel room works for him. Those core features for the guestroom itself are simply:

- entrances;
- maneuvering space at bed;
- toilet;
- sink;
- bath/shower

That's it. These are the critical areas in the guestroom. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs these handful of areas to be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

26. For the beds themselves, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Here, the hotel does exactly what it should: it provided actual details by aying that the accessible guestroom entrances are 32 inches wide.

27. For the bed itself, the only thing plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can pull up next to the bed for transfer. This is critical information because plaintiff needs to pull his wheelchair alongside the bed. Without this maneuvering clearance, plaintiff is in trouble. Here, the website says nothing about the accessibility of the bed.

28. For the restroom sink, the two things that will determine whether plaintiff can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact? The second thing is whether the lavatory mirror is mounted at a height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high." Plaintiff has had tremendous difficulty with using lavatory sinks in the past because sinks were cabinet style sinks or had low hanging aprons that did not provide knee clearance for a wheelchair user to pull up and under or, alternatively, where the plumbing underneath the sink was not wrapped with insulation to protect against burning contact to his knees. But here, the hotel reservation website says nothing about the accessibility of the sink.

29. For the restroom toilet, plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer. Here, there is no information about the toilet at all. Due to plaintiff's profound disabilities, transferring from wheelchair to toilet is difficult and dangerous for him. He needs a toilet at the correct height and he needs grab bars.

30. Finally, for the shower, plaintiff needs to know only a small number of things: (1) what type of shower it is (transfer, standard roll-in, or alternate roll-in), (2) whether it has an in-shower seat; (3) that there are grab bars mounted on the walls; (4) that there is a detachable hand-held shower wand for washing himself and (5) that the wall mounted accessories and equipment are all within

48 inches height. The plaintiff needs to transfer from his wheelchair to a shower seat and would like to find a roll-in shower with both a shower seat (not required for all showers) and grab bars. But the hotel says nothing more than "roll-in shower" and "shower wand, adjustable."

31. This small list of items are the bare necessities that plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is reasonably necessary for plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

32. Other accessibility requirements such as slopes of surfaces, whether the hand-held shower wand has a non-positive shut off valve, the temperature regulator, the tensile strength and rotational design of grab bars, and so many more technical requirements under the ADA are beyond what is a *reasonable* level of detail and plaintiff does not expect or demand that such information is provided.

33. But because the defendant has failed to identify and describe—and/or failed to provide the necessary information to the third party operator of the website reservation system—the core accessibility features in enough detail to reasonably permit individuals with disabilities to *assess independently* whether a given hotel or guest room meets his accessibility needs, the defendant fails to comply with its ADA obligations and the result is that the plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

34. This lack of information created difficulty for the plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from

booking a room at the W San Francisco Hotel.

35. Plaintiff lives in Beaumont California but travels to San Francisco on a consistent and regular basis (many times a year) for a variety of reasons, primary among them is his work as an ADA tester. Plaintiff frequents businesses to determine if they have complied with the anti-discrimination mandates of the ADA. Plaintiff will continue his work as an ADA tester into the foreseeable future and will be travelling regular to the San Francisco area.

36. Assuming that COVID doesn't continue to be an issue, the plaintiff is planning on making the trip sometime between May and June of 2021.

37. As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the W San Francisco Hotel when it has been represented to him that the hotel's website reservation system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

38. Plaintiff would like to patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

39. Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated as well as the fact that plaintiff finds this hotel to be centrally located to many of the places he intends to visit and close to the airport.

40. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

41. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

42. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

43. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

    a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

    b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel

1                 or guest room meets his or her accessibility needs; and

     c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

*See* 28 C.F.R. § 36.302(e).

44. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

45. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

46. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

47. Defendants' acts and omissions, as herein alleged, have violated the

Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

48. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. *See* Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: January 19, 2021          CENTER FOR DISABILITY ACCESS

                                              By: __/s/ Russell Handy__
                                              Russell Handy
                                              Attorney for Plaintiff